**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ZEFFREY RODRIGUES and ZENA RODRIGUES,<br><br>Plaintiffs,<br><br>v.<br><br>FORT LEE BOARD OF EDUCATION and NEW JERSEY OFFICE OF ADMINISTRATIVE LAW,<br><br>Defendants. | Civil Action No. 2:08-cv-05736 (SDW) (MCA)<br><br>**OPINION**<br><br>February 7, 2011 |

**WIGENTON**, District Judge.

Before the Court is Plaintiffs' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 and appeal of the magistrate judge's denial of Plaintiffs' motion to amend or correct the Complaint. This Court has jurisdiction pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391(b). This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, this Court **DENIES** Plaintiffs' motions and **GRANTS** summary judgment in favor of Defendants.

**PROCEDURAL HISTORY**

Plaintiff filed a petition with the Office of Administrative Law ("OAL") on November 28, 2006, seeking two years of compensatory education in a residential placement; immediate adoption of the parent-proposed individualized education plan ("IEP") for 2006-2007; and door-to-door taxi service to and from school. After several motions as well as the replacement of both the original judge and attorneys,

1

Administrative Law Judge ("ALJ") Carol I. Cohen, issued a decision on August 25, 2008, denying petitioner's requests.

On November 21, 2008, Plaintiffs brought an action pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(i).  (Compl. pg. 1.)  The Complaint alleges that the ALJ erred in failing to find a denial of a Free Appropriate Public Education ("FAPE") and erred in denying the relief sought "namely three years of compensatory education at a residential placement and reimbursement for tuition at Riverview School, including related transportation costs." (Compl. pgs. 7-9.)  Plaintiffs also allege that they were denied procedural due process by the ALJ's refusal to accept certain evidence when conducting hearings under docket number EDS 11423-06 and by the ALJ's refusal to hold hearings for claims brought under docket numbers EDS 07800-07 and EDS 05287-07.  (Compl. pg. 8.)  Plaintiffs', pro-se, filed both a motion to amend and/or correct the Complaint and a motion for partial summary judgment on June 4, 2010.  Magistrate Judge Madeline C. Arleo denied the motion to amend and/or correct the Complaint on September 24, 2010.  On November 5, 2010, Plaintiffs filed an appeal of Magistrate Judge Arleo's decision denying the motion to amend and/or correct.  This Court now addresses Plaintiffs' motion for partial summary judgment and appeal of Magistrate Judge Arleo's decision.  For the reasons discussed below, this Court will address this motion as a full summary judgment motion.

**FACTUAL BACKGROUND**

This factual background is taken entirely from the decision of the administrative law judge of the Office of Administrative Law since that is the only record submitted to this court.  No additional evidence has been presented.

The following narrative is found in the findings of fact[1] section of the ALJ's decision dated August 25, 2008. The ALJ relied on the testimony of Minja Cho, a learning consultant employed by the Fort Lee Board of Education; Howard Lipoff, a special education teacher at Fort Lee High School; Maria Kolic, Z.R.'s one-to-one aide; Michele Blum, a special education teacher and speech language therapist at Fort Lee Board of Education; Adam Krass, an assistive technology specialist; Casey Ngo-Miller, a school psychologist at Fort Lee High School; Dr. Steven Pavlakis, Z.R.'s neurologist since birth; Marilyn Arons, an expert in the field of special education whom had worked academically with Z.R.; Dr. Adine Ray Usher, a private educational consultant; Dr. Jean North, director of Special Services for Fort Lee; Mr. R, Z.R.'s father; and Z.R. The only record before the Court of these individual's testimony is the summary compiled by the ALJ.

Z.R., a twelfth-grade student at the time of the filing of the due process petition in November 2006, is classified with multiple disabilities. These disabilities, which are the result of cerebral palsy, include: low muscle tone; difficulty with fine-motor skills; slowed movement; and slow and delayed speech. As a result, Z.R. experiences fatigue.

Z.R. was "mainstreamed" in both the eleventh and twelfth grades, meaning that she attended general education classes with the exception of Study Skills, a special education class providing additional reinforcement. Z.R. was also "provided with accommodations and related services in the form of a one-to-one aide, speech language services, assistive technology, a laptop computer with voice-recognition software, and additional time to take examinations." Z.R. passed the New Jersey High School

---

[1] For the sake of brevity, this Court will not recount all of the ALJ's findings of fact. However, please note that this Court has reviewed all of those findings in reaching this decision.

Proficiency Assessment as well as all of her classes in both the eleventh and twelfth grades.

Z.R. attended a summer program at the Riverview School in Massachusetts following the completion of twelfth grade. The comments section of a report received from the Riverview School and summarized by the ALJ, stated that Z.R. "is a fluent reader with solid word attach and vocabulary skills; . . . completed all reading and written assignments with minimal support; . . . [and] works with increased independence on the computer." However, the report also noted that she still depended on the teacher for correct spelling, cues to use punctuation, and clear, concise directions. Although Z.R. received marks of "D" in her high school math classes, the Riverview School report indicated that she "displayed good consumer math skills[;] was able to relate classroom assignments to 'hands-on' activities outside of the classroom[; and] was able to work at a high level when asked to help other students or solve a multi-step math problem."

The ALJ summarized the testimony of several witnesses as to the ability of Z.R. to engage in day-to-day activity. ALJ Cohen determined that "at the conclusion of her high school career Z.R. was able to function in the outside world as well as most typically developing graduates." The ALJ based her opinion on the testimony of the individuals listed above and noted that Kolic, Z.R.'s aide from ninth to twelfth grades, testified as to Z.R.'s ability to perform certain tasks for herself including picking out her own lunch, placing it on the tray, and paying for it at the cashier without assistance. Kolic also testified that although she took notes for Z.R. in class, Z.R. completed her own school work. Ngo-Miller, the Fort Lee school psychologist, testified that Z.R. "possessed appropriate social skills and could express her opinions in an assertive manner."

**SUMMARY JUDGMENT STANDARD**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if a reasonable jury could return a verdict for the nonmovant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once the moving party meets the initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). The court may not weigh the evidence and determine the truth of the matter but rather determine whether there is a genuine issue as to a material fact. *Anderson*, 477 U.S. at 249. In doing so, the court must construe the facts and inferences in a light most favorable to the nonmoving party. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991). The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005). If the nonmoving party "fail[s] to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. at 323.

A district court "possess[es] the power to enter summary judgments sua sponte, so long as the losing party was on notice that she had to come forward with all of her evidence." *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 280 (3d Cir. 2010) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986)). "Where it appears clearly upon the record that all of the evidentiary materials that a party might submit in response to a motion for summary judgment are before the court," and "those materials show that no material dispute of fact exists and that the other party is entitled to judgment as a matter of law" then the district court may enter summary judgment sua sponte. *Gibson v. Mayor & Council of Wilmington*, 355 F.3d 215, 224 (3d Cir. 2004); see also *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d at 280 (declaring that "[t]he notice requirement is satisfied when a case involves 'the presence of a fully developed record, the lack of prejudice, [and] a decision based on a purely legal issue.'") (quoting *Gibson v. City of Wilmington*, 355 F.3d at 224).

**MOTION TO AMEND**

>Plaintiffs filed a motion to amend before Magistrate Judge Arleo seeking to:
>
>(1) clarify that the instant action arises under the IDEA, not the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.; (2) include a demand for a jury trial; (3) add a claim for violation of plaintiffs' Fourteenth Amendment equal protection rights under 42 U.S.C. § 1983 ("§ 1983 claim") [against the OAL]; (4) have this Court appoint a special master to oversee the OAL's special education due process hearings; and (5) include a request for $500,000 in punitive damages.
>
>[*Rodriguez v. Fort Lee Bd. of Educ.*, No. 08-5736 at 2 (Sept. 24, 2010).]

Plaintiff also sought to extend the time to serve a copy of the summons and complaint on the Office of Administrative Law. Magistrate Judge Arleo denied the motion holding that (1) Plaintiffs' original complaint demonstrated that the action was brought under the

IDEA and therefore that distinction was moot; (2) there is no right to a jury trial for IDEA litigants; (3) sovereign immunity prevents Plaintiffs' from initiating a 1983 claim against the OAL; (4) Plaintiff's request for an extension of time for service of the OAL did not demonstrate good cause warranting an extension.

A magistrate judge may hear and decide pretrial matters that are not dispositive of a party's claim or defense. Fed. R. Civ. Pro. 72(a). A party may appeal a magistrate judge's decision within fourteen days after being served a copy of that decision. *Id.* The district judge assigned to the matter will set aside the magistrate judge's decision only if it "is clearly erroneous or is contrary to law." *Id.* "[A] finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Wyeth v. Abbott Labs.*, 692 F. Supp. 2d 453, 455 (D.N.J. 2010) (quoting *Marks v. Struble*, 347 F. Supp. 2d 136, 149 (D.N.J. 2004)) (alteration in original). "A ruling is contrary to law if the magistrate judge has misinterpreted or misapplied applicable law." *Id.*

Pursuant to Federal Rule of Civil Procedure 15(a), a plaintiff may amend a complaint once as a matter of course within the permitted time period. Fed. R. Civ. P. 15(a)(1). A party may also amend a pleading with the court's leave which should be given freely "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, a court may deny leave to amend "if a plaintiff's delay in seeking amendment is undue, motivated by bad faith, [] prejudicial to the opposing party," or fails to state a cause of action. *Adams v. Gould, Inc.*, 739 F.2d 858, 864 (3d Cir. 1984). A motion to amend may also be denied if the amendment would be futile. *F.D.I.C. v. Bathgate*, 27 F.3d 850, 874 (3d Cir.1994).

7

Magistrate Judge Arleo's letter order dated September 24, 2010, clearly explains that Plaintiff's proposed amendments would be futile as they would not expand the original complaint or add any additional causes of action. For this reason, this court cannot find that Magistrate Judge Arleo's denial of the motion to amend was clearly erroneous or contrary to law.

Magistrate Judge Arleo also denied Plaintiffs' request to extend the time to serve the OAL. Under Federal Rule of Civil Procedure 4(m):

> If a defendant is not served within 120 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Therefore, absent a showing of good cause, the court has the discretion to dismiss the action or extend the time for service. *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995). Courts consider "three factors in determining the existence of good cause: (1) reasonableness of plaintiff's efforts to serve (2) prejudice to the defendant by lack of timely service and (3) whether plaintiff moved for an enlargement of time to serve." *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995) (citing *United States v. Nuttall*, 122 F.R.D. 163, 166-67 (D. Del. 1988)). The Third Circuit has "equated 'good cause' with the concept of 'excusable neglect' of Federal Rule of Civil Procedure 6(b)(2), which requires 'a demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified in the rules.'" *Id.*

Magistrate Judge Arleo explained her reasoning for denying the request for an extension of time, stating that:

> Here, plaintiffs were represented by counsel at the time summonses were issued for both Fort Lee and OAL. Fort Lee was served and entered an appearance. OAL was not served and has not so entered an appearance. Plaintiffs offer no explanation for their attorneys' alleged failure to serve OAL. Plaintiffs fired their attorneys in September 2009 — nine months before they sought the instant extension of time. These circumstances alone do not demonstrate good cause warranting an extension of time for service.

This Court cannot find that Magistrate Judge Arleo's ruling was clearing erroneous or contrary to law in light of the fact that Plaintiff has not provided a reasonable basis for not complying with the service requirements and waited nine months to seek an extension. Thus, the OAL is dismissed as a defendant.

**REVIEW OF OAL DECISION**

Plaintiffs' submitted a motion for partial summary judgment in June 2010 requesting that this Court "review [the] administrative decision pursuant to the Individuals with Disabilities Education Act."

"New Jersey employs the one-tier administrative system, under which due process hearings are conducted before an administrative law judge of the New Jersey Office of Administrative Law." *D.B. v. Ocean Twp. Bd. of Educ.*, 985 F. Supp. 457, 472 (D.N.J. 1997) (citing *Lascari v. Board of Educ. of Ramapo Indian Hills Regional High Sch. Dist.*, 116 N.J. 30, 39 (1989)). Once an administrative law judge makes a determination, any party has the right to appeal either in a state court or to a federal district court. *Id.* . The reviewing court "shall receive the records of the administrative proceedings; shall hear additional evidence at the request of a party; and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. §§ 1415(i)(2)(C)(i)-(iii).

9

Although, the district court will conduct an independent review of the case, "due weight" must be given to the factual findings of the administrative agency. *D.B. v. Ocean Twp. Bd. of Educ.*, 985 F. Supp. at 472. The Third Circuit has interpreted the due weight requirement to be a "modified de novo review." *S.H. v. State-Operated Sch. Dist. of Newark*, 336 F.3d 260, 270 (3d Cir. 2003). Under the "modified de novo review", "[f]actual findings from the administrative proceedings are to be considered prima facie correct." *Id*. If the reviewing court disagrees with the administrative agency's factual findings, it must give an explanation as to why. *Id.* "[T]he court must explain why it does not accept the ALJ's findings of fact to avoid the impression that it is substituting its own notions of sound educational policy for those of the agency it reviews." *Id.* at 270. In addition, if the reviewing court finds factual conclusions contrary to that of the ALJ's without hearing any additional evidence, it must point to evidence in the record before it for support. *Id.* This Court must accept the ALJ's factual finding as it is the only record before the Court.

**Individuals with Disabilities Education Act**

The IDEA requires that school districts provide "free appropriate public education" to disabled children. *M.C. ex rel. J.C. v. Central Regional Sch. Dist.*, 81 F.3d 389, 391 (3d Cir. 1996) (citing 20 U.S.C. § 1400(c)). The FAPE must be "tailored to the unique needs of the handicapped child by means of an [IEP]". . . "prepared at a meeting between a qualified representative of the local educational agency, the child's teacher, the child's parents or guardian, and, where appropriate, the child." *Bd. of Educ. v. Rowley*, 458 U.S. 176, 182 (1982). The IEP must be a written document containing:

  (A) a statement of the present levels of educational performance of such child,

    (B) a statement of annual goals, including short-term instructional objectives,

    (C) a statement of the specific educational services to be provided to such child, and the extent to which such child will be able to participate in regular educational programs,

    (D) the projected date for initiation and anticipated duration of such services, and

    (E) appropriate objective criteria and evaluation procedures and schedules for determining, on at least an annual basis, whether instructional objectives are being achieved.

    [*Id.* (quoting 20 U.S.C. § 1401(19)).]

The Supreme Court has clarified that a FAPE "consists of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction." *Id.* at 188-89. The IDEA also "requires that such instruction and services be provided at public expense and under public supervision, meet the State's educational standards, approximate the grade levels used in the State's regular education, and comport with the child's IEP." *Id.* at 189.

    The Third Circuit explained that "the education provided must 'be sufficient to confer some educational benefit upon the handicapped child,' although the state is not required to 'maximize the potential of handicapped children.'" *T.R. ex rel. N.R. v. Kingwood Twp. Bd. of Educ.*, 205 F.3d 572, 577 (3d Cir. 2000) (internal citations omitted). An appropriate individualized education program "must provide 'significant learning' and confer 'meaningful benefit.'" *Id.* In addition, "the educational benefit of an IEP 'must be gauged in relation to a child's potential.'" *Id.* at 578.

    Generally, determinations of whether a plaintiff was denied a FAPE will be made on substantive grounds. 20 U.S.C. § 1415(f)(3)(E)(i). However, the provision of a free

11

appropriate public education comes with the guarantee of procedural safeguards. *C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 65-66 (3d Cir. 2010). A finding that a procedural violation denied the plaintiff a FAPE, will entitle the plaintiff to compensatory education or tuition reimbursement. *Id.* Procedural inadequacies will rise to the level of substantive violations only if (1) the child's right to a free public education was impeded; (2) "the parents' opportunity to participate in the decision making process regarding the provision of a free appropriate public education to the parents' child" was significantly impeded; or (3) the violation "caused a deprivation of educational benefits." 20 U.S.C. § 1415(f)(3)(E). The preponderance of the evidence must indicate that the procedural defects resulted in the loss of an educational opportunity. *C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 66, 67 (3d Cir. 2010) (holding that "failure to have an IEP in place on the first day of the . . . school year, and the District's failure to notify the Parents ten days prior to any scheduled IEP meeting" did not constitute a denial of a FAPE); *G.N v. Bd. of Educ. of Livingston*, 2007 U.S. Dist. Lexis 57081 (D.N.J. 2007) (holding that the lack of goals and objectives coupled with a school district's refusal to provide a second draft IEP, while comprising procedural violations, did not amount to a denial of FAPE).

      Plaintiffs argue that the procedural defects consisted of: (1) the Fort Lee Board of Education's, also referred to as "the District," failure to develop goals and objectives for testing; (2) Z.R. not having an individually designed transition plan; (3) the discontinuance of occupational therapy ("OT") services without an IEP meeting; and (4) failure to provide independent evaluations. (Pls' Br. at10-13.)

**Procedural Violations**

The ALJ addressed the school district's goals and objectives for Z.R. The ALJ determined that "Z.R.'s functioning is below grade level in many areas, indicating a need for goals and objectives in her general education curriculum," which the school district did not provide. (OAL Decision at 118.) The ALJ also found that while assistive technology goals and objectives were not explicitly labeled as such, Krass did indicate that Z.R. would focus on using different programs on a laptop computer. (OAL Decision at 122.) However, "there was no objective standard to gauge progress toward meeting the goal" thus producing a procedural violation. (OAL Decision at 122.) In addition, the ALJ did not find that there were clear benchmarks outlined in Z.R.'s evaluation indicating Z.R.'s speech goals and objectives. (OAL Decision at 124.)

The ALJ's findings regarding the discontinuance of occupational therapy were very straight forward. The ALJ found that the school district discontinued occupational therapy, which was required by the IEP. (OAL Decision at 126.)

Finally, according to the ALJ, Mr. R, through Arons, requested "a comprehensive vocational assessment, and assistive technology evaluation, an occupational therapy evaluation, a speech evaluation, and a functional [activities of daily living] assessment." (OAL Decision at 132.) The ALJ found that an independent occupational evaluation had been conducted since the school district contracted with an outside service that provided a therapist to conduct an evaluation. (OAL Decision at 129.) This therapist was not the same person who provided occupational therapy to Z.R. (OAL Decision at 129.) However, as for the remainder of the evaluations or assessments, the ALJ found that the school district "failed to follow required procedures, by neither conducting the evaluation

13

itself, nor providing the parents with the information about where to obtain an independent evaluation, nor proceeding with a due process petition to prove why these evaluations were unnecessary." (OAL Decision at 132.)

Defendant does not dispute these allegations, and this Court agrees with the ALJ that these actions constituted procedural violations; however, the ALJ did not err in finding that these failures did not rise to the level of a substantive deprivation. Plaintiffs have not established that Z.R.'s "right to a free public education was impeded" or that the violations "caused a deprivation of educational benefits."

Z.R. received study skills classes and "was provided with accommodations and related services in the form of a one-to-one aide, speech-language services, assistive technology, a laptop computer with voice recognition software, and additional time to take examinations."[2] Z.R. also participated in a program entitled "heightened Independence and Progress" aimed at self-advocacy skills. Dr. North opined that Z.R. achieved a higher level of performance in her final two years of high school than many typically developing students at Fort Lee High School who went on to graduate.

Z.R. took and passed the New Jersey High School Proficiency Assessment in the eleventh grade. She received above average grades in all of her classes with the exception of math in both the eleventh and twelfth grades. Z.R. received satisfactory ratings in language arts, social science, and math classes while attending the summer program at the Riverview School. She was observed participating in her high school classes and volunteering to answer questions. In addition to academics, Kolic observed

---

[2]Plaintiffs' brief claims that Z.R. did not have an IEP for the eleventh grade. (Pls' Br. at 8.) This Court finds that this was not the case as there are several references to an eleventh grade IEP in the record. (See OAL Decision at 55; 105.)

that Z.R. was able to socialize with other students; use her cell phone to summon a taxi; prepare snacks for herself; and use the internet for research.

Furthermore, Plaintiffs have not demonstrated that Z.R.'s parents' opportunity to participate in the decision making process was significantly impeded. The ALJ found that:

> Mr. R. has been involved in Z.R.'s educational planning since elementary school. He regularly attended her IEP meetings and provided his input as to the type of program that he wanted for Z.R. Mr. R. made it clear that he wanted Z.R. to attend college and that he wanted her to be mainstreamed in all of her courses. . . . While Mr. R. claimed that he did not know what was required in an IEP and basically just rubber-stamped the document presented by the District, on March 2, 1994, Mr. R. sent a letter to the Fort Lee CST in which he alleged that Z.R.'s rights had been violated. . . . He demanded a copy of every piece of paper that went into Z.R.'s file and required a copy of the IEP at least three weeks before the scheduled date for signing the document.

Mr. R. also had access to various specialists such as Krass and Dr. North. He conferred with these specialists on numerous occasions and closely monitored Z.R.'s progress including her use of assistive technology.

**The Transition Plan**

The ALJ's findings regarding the transition plan are as follows:

> Representatives of Fort Lee provided Z.R. and her parents with a considerable volume of information about agencies whose services could be helpful in transition planning, including Bergen Community College, Division of Vocational Rehabilitation, Springboard and the Heightened Independence and Progress (HIP) Program of Bergen County. Additionally, all versions of the twelfth-grade IEP contained an extensive "senior year checklist," which was designed to help the student and parent to make a smooth transition into life after graduation. The District also worked with Ms. Arons, petitioners' representative, in assembling the names and contact information of other resources for Z.R. Even Dr. Usher acknowledged that there was information in the transition section of the IEP specific to Z.R. Finally, the District also created a social skills class for Z.R. and a small group of peers to "foster her interpersonal skills and to encourage street smartness." While Z.R.'s goals for transition planning

15

> may have been somewhat vague and necessary agencies may not have attended transition meetings as required, the District did not violate the IDEA in implementing Z.R.'s transition plans because it offered substantial information and assistance tailored to Z.R.'s unique needs and personal goals. Further, the failure on the part of Z.R. and her parents to follow through on the Districts' advice lends support to this premise.
>
> [OAL Decision at 137.]

Under the IDEA, an IEP must include a transition plan for a student aged sixteen or older to support a student's passage from school to life after school. *High v. Exeter Twp. Sch. Dist.*, No. 09- 2202, 2010 WL 363832, at *6 (E.D. Pa. Feb. 1, 2010) (citing 20 U.S.C. § 1414(d)(1)(A)(VIII); 34 C.F.R. § 200.320(b)). The IDEA does not dictate "separate FAPE requirement[s] for transition plans." *Klein Indep. Sch. Dist. v. Hovem*, No. H-09-137, 2010 WL 3825416, at *20 (S.D. Texas Sept. 27, 2010).

The IEP must "include appropriate measurable post-secondary goals based on age-appropriate transition assessments related to training, education, employment," and if applicable "independent living skills, as well as corresponding transition services." *High v. Exeter Twp. Sch. Dist.*, 2010 WL 363832, at *6; §§ 1414(d)(1)(A)(VIII)(aa)-(cc). An IEP "must include a method to measure a child's progress; however, a transition plan must only be updated annually and include measurable goals and corresponding services." *Id.*

An IEP transition plan satisfies the requirements if, for example, it includes a "discussion of transition services under IDEA." *Pace v. Bogalusa City School Bd.*, 137 F.Supp.2d 711, 717 (E.D. La. 2001). Additionally, the procedural requirements are satisfied if a school contacts local and state agencies to assist a student with providing transition services. *Id.* Within our circuit, the Court of Appeals "has not defined what

amount of transition planning is required in an IEP to ensure [free and appropriate public education]." *High v. Exeter Twp. Sch. Dist.*, 2010 WL 363832, at *6. The Third Circuit has, for example, found a transition plan that was "left largely blank" does not constitute a violation. *Sinan L. v. Sch. Dist. of Phila.*, No. 07-3258, 2008 WL 4335936, at *1-2 (3d Cir. Sept. 24, 2008). In *Sinan*, "the district court adopted the Seventh Circuit's assertion that 'a school district's failure to include a transition plan in an IEP is a mere procedural flaw and does not violate any substantive rights.'" *Sinan L. v. Sch. Dist. of Phila.*, No. 06-1342, 2007 WL 1933021, at *8 (E.D. Pa. July 2, 2007) (citing *Bd. of Educ. of Twp. High Sch. Dist. No. 211 v. Ross*, No. 05-3700, 2007 WL 1374919, at *7-8 (7th Cir. May 11, 2007)).

The transition plan included assessments and goals related to training, education, employment, independent living skills, and transition services. Plaintiffs' were provided with information of agencies that would provide transitional services and an extensive checklist of what needed to be accomplished during Z.R.'s senior year to aide in the transition. A social skills class was created for Z.R. and representatives of the school district worked with Arons to ensure a smooth transition. The record is not clear whether the school district invited any of the various agencies named above to attend transition planning meetings. However, even if this were the case, the failure to invite these agencies would amount to a procedural violation. As discussed above, procedural defects in this case have not amounted to a substantive deprivation of Z.R.'s right to a free public education or her parents' opportunity to participate in the decision making process.

**Plaintiff's Request for a Cerebral Palsy Expert Educator**

Plaintiffs argue that Z.R. did not receive an appropriate education because the professional staff lacked expertise or knowledge of cerebral palsy. The ALJ found, however, that an individualized education program team ("IEP team") does not require a school to include an expert on a particular disability; rather, the IEP team must include at least one special education teacher. (ALJ Decision at 140.)

Courts have stated that "[t]he issue of whether an IEP is appropriate is a question of fact." *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564 (3d Cir. 2010) (citing *State-Operated Sch. Dist. of Newark¸* 336 F.3d 260, 271 (3d Cir. 2003). In *H. Holmes v. Millcreek Twp. School Dist.*, Plaintiffs argued that a school district's "evaluation was inappropriate because of the lack of expertise of the individuals who conducted it." 205 F.3d 583, 591 (3d Cir. 2000). Specifically, the plaintiffs argued that a state guideline recommended the use of psychologists fluent in sign language or another medium of communication to evaluate deaf students. *Id.* at 591. The court, giving deference to findings from the administrative proceeding, found that despite a school psychologist's lack of knowledge in sign language, the evaluation of the deaf student was appropriate. *Id.*

This Court is required to give the appropriate deference to the ALJ's findings of fact and keep in mind, as mentioned above, that "[t]he issue of whether an IEP is appropriate is a question of fact." *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d at 564. The ALJ found that the level of expertise of the experts involved in this case was adequate. That finding, combined with the holding in *Holmes*, leads this Court to find the statutory language does not require professional staff to possess expertise on cerebral palsy, which

18

seems a greater burden on schools than requiring a staff to be fluent in sign language to evaluate a deaf student.

**CONCLUSION**

For the reasons stated above Z.R. was not deprived of a FAPE. As such, she is not entitled to the remedies requested by Plaintiffs, mainly after school taxi service, compensatory education, and transition services. Summary judgment for Defendants is therefore appropriate.

s/Susan D. Wigenton, U.S.D.J.

Orig: Clerk
Cc: Madeline Cox Arleo, U.S.M.J.
 Parties